# The Decatur Cereal Mill Co. v. Edward J. Gogerty.

1. VICE-PRINCIPAL—*Defined, etc.—When He Acts in Excess of His Authority.*—A vice-principal is one to whom is deputed the discharge of some duty or the exercise of some power which belongs to the master, as such. But he does not act as a vice-principal when engaged in any work which does not pertain to the duty or peculiar power of the master, just as an agent does not act as an agent when doing some act entirely outside of his agency.

2. NEGLIGENCE—*Defects in Appliances—Car Puller.*—It is negligence on the part of a mill-owner to furnish a rope of different sizes, knotted together with loose ends, for use upon the drum of a car puller.

**Trespass on the Case,** for personal injuries. Trial in the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the November term, 1898. Affirmed. Opinion filed February 7, 1899.

JOHNS & HOUSUM, attorneys for appellant.

A conductor of a freight train who voluntarily, even with the acquiescence of his employer, undertakes to uncouple cars by going between them while moving, when the same act could have been performed when cars were stopped or from the platform, can not recover for an injury. Memphis & C. R. Co. v. Graham (Ala.), 10 So. Rep. 283.

Where plaintiff was told to repair a dump-car in a sawmill as well as he could temporarily, and, without either authority or direction, went with a piece of lumber to a revolving cross-cut saw to cut the lumber for the car and was there injured by the negligent handling of the lumber, his case should not be allowed to go to a jury. Lindstrand v. Delta Lumber Co. (Mich.), 32 N. W. Rep. 427.

Where an employe had entire charge in sinking a shaft, the direction of his fellow-workmen and authority to order repairs, and was injured by defective machinery, he can not recover, as it must be considered he knew, or had means of knowing equal to those of his master, concerning the defects. Wells v. Coe (Colo.), 11 Pac. Rep. 50.

Same principle: Erskine v. Cheno Val. Beet Sugar Co., 71 Fed. Rep. 230; Texas Cent. R. Co. v. Lyons, 34 S. W. Rep. 362.

A head sawyer having entire control of a lever that regulated the speed of a saw carriage, while sawing a crooked log, ran the machinery too rapidly and in consequence was injured; held, he could not recover. Bibby v. Wausau Lumber Co. (Mo.), 50 N. W. Rep. 337.

The fact that one servant has power to control and direct the action of another does not render the master liable for his negligence unless the negligent act arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his laborers. I. C. R. R. Co. v. Swisher, 61 Ill. App. 613.

If a party voluntarily goes into a known danger while pursuing his duties, not required or forced by the master, and is injured, he can not recover. Evans v. Chessmond, 38 Ill. App. 615; Coal Run Coal Co. v. Jones, 127 Ill. 379; Henderson v. Coons, 31 Ill. App. 77.

An injury that is the natural and probable consequence of acts of negligence is actionable, but an injury that could not have been foreseen, or reasonably anticipated as the probable result of the negligence, is not actionable. Moley v. Pickle Marble Co., 74 Fed. Rep. 155; Martin v. Cook, 14 N. Y. Supp. 329.

MILLS BROS. and HUGH CREA, attorneys for appellee.

A servant can not be said to take the risk of working with defective appliances unless he knows, not only the condition of things, but also that danger exists in such condition. Anderson v. Clark, 155 Mass. 368.

Where it requires skill and judgment by the servant, not possessed by ordinary observers, to have knowledge of hazards that may be apprehended from the character and condition of the appliances or obstructions, he does not assume these hazards, unless possessed of these requirements. Davidson v. Cornell et al., 132 N. Y. 228.

The fact that a defect in an appliance was open to plaint-

iff's inspection (the flange of an engine wheel deeply worn, and that he knew it was worn), would not necessarily defeat a recovery where it was a matter of skill and judgment which he did not possess to know how much wear and tear it would stand. Bridges v. St. L., I. M. & S. R. Co., 6 Mo. App. 389.

While a servant in the use of appliances is bound to take notice of those dangerous defects of which he has knowledge, and which are obvious to his senses, yet he is not bound to investigate for himself the department of work with which he has nothing to do, and to set up his judgment against that of a master. Devlin v. W., St. L. & P. Ry. Co., 87 Mo. 545.

A prudent man has a right, within reasonable limits, to rely upon the ability and skill of the agent in whose charge the common master has placed him, and is not bound at his peril to set his own judgment against that of his superior. This was said where an employe, at the command of his foreman, left his regular work and operated a cut-off saw, which proved to be dangerous by reason of the rope which controlled the saw being worn and defective. Indiana Car Co. v. Parker, 100 Ind. 181; Atlas Engine Works v. Randall, 100 Ind. 293.

MR. JUSTICE WRIGHT delivered the opinion of the court.

This was an action by appellee against appellant for negligence in failing to furnish a reasonably safe rope attachment to a car puller in use in appellant's mill, by reason of which, while operating it, appellee was injured and lost an arm. A trial by jury resulted in a verdict and judgment against appellant for $3,500, from which it appeals to this court. The errors mainly relied upon, in the argument of counsel, by which a reversal of the judgment is sought, are that the verdict is not sustained by the evidence, and the court gave improper and refused proper instructions to the jury.

. Appellee's regular employment in the mill of appellant was that of a bookkeeper and clerk. Travis generally tended the car puller and loaded cars out. Turner was general

Decatur Cereal Mill Co. v. Gogerty.

superintendent, had control of all the men, and sometimes assisted in loading and unloading cars, and in the operation of the car puller. The car puller is what its name implies, a device used to pull cars by means of a rope attachment hitched to cars and operated by means of a drum or spool, around which the rope winds and unwinds, the power being applied by machinery attached to the engine. The rope used was over a hundred feet in length and about an inch and a half or two inches in diameter. At the time of the accident to appellee the rope in use was of different kinds and sizes tied and knotted together in at least two places, and at the knotted places there were loose ends, without confinement. The knotted portion of the rope was inside the mill, next to the end used around the drum. On August 13, 1897, Turner, the superintendent, desiring to be absent from the mill, requested appellee to take his place, and instructed him to do everything just as he would himself. During the day appellee undertook to operate the car puller, when the knots and loose ends of the rope impeded in some way its operation upon the drum, and involved appellee's arm and injured it, in consequence of which amputation became necessary.

It is first contended that appellee at the time of his injury was for the time being superintendent of appellant, and, therefore, a vice-principal, having full power and authority, and whose duty it was, to inspect all machinery and apparatus and condemn and replace such as was found defective, and for a failure in this respect he could have no right of action for injuries received in the voluntary use of the defective rope. We are not inclined to hold that the evidence proves that appellee was in any proper sense a vice-principal on the day he was injured. No authority is shown by the evidence to have been vested in Turner by the board of directors, to appoint a deputy, and if there was such evidence, it is not apparent that it was the intention of Turner to confer the authority of the master upon appellee to inspect the apparatus or machinery, or give orders and directions concerning its use. All the men for that day were at

the work respectively designed for them, the machinery in operation and the absence of the superintendent was to be but temporary. Appellee, according to instructions from Turner, was to do everything just as he, Turner, would himself do. This, it seems to us, could only refer to such duties as Turner was accustomed to do merely as a fellow-servant. It is not unusual for the same person to be the representative of the master as to certain duties, and a mere servant as to others, and when injured in the latter capacity, by reason of the neglect of the master, his rights are not to be abridged because as to other duties he may have been a vice-principal. A vice-principal is one to whom is deputed the discharge of some duty or the exercise of some power which belongs to the master, as such. And he does not act as a vice-principal when engaged in any work which does not pertain to the duty or peculiar power of the master, just as an agent does not act as an agent when doing some act entirely outside of his agency. Shear. & Red. Neg., 231. So in the operation of the car puller, a business in which Turner sometimes engaged, appellee was not engaged in work in any manner pertaining to the duty or peculiar power of the master.

That it was negligence on the part of appellant to furnish a rope of different sizes, knotted together with loose ends, for use upon the drum of the car puller, seems to us too plain for argument. It therefore remains to determine, as regards the facts in the case, whether at the time appellee received his injury he was in the exercise of ordinary care. He was the bookkeeper and clerk of appellant, and in that capacity it is not to be inferred he had any occasion to use the car puller at any previous time, and therefore his position was such as that he might be permitted to rely upon the ordinary presumption that the master had discharged his duty to the servant in using reasonable care to furnish reasonably safe apparatus for his use. So far as disclosed by the evidence it was the first instance appellee had operated the puller, but from common observation it is reasonable to suppose he understood its mechanism. The

first and only notice appellee had of the defects in the rope attachment was the incident involving the loss of his arm. We have no hesitancy in saying that from the facts and circumstances in evidence the jury were warranted in finding the appellee was in the exercise of ordinary care at the time of his injury, and we accept the verdict as decisive of this question.

We have considered the points made by counsel for appellant against the instructions of the court given at the instance of appellee, and the modifications of those offered by appellant, and of such as were refused by the court requested by appellant, and we are impelled to the conviction, that in view of the entire series of instructions given by the court, they composed a fair and impartial exposition of the law applicable to the issues, most favorably perhaps to appellant, and in this respect it has no just cause for complaint.

Finding no error in the record and proceedings of the Circuit Court its judgment will be affirmed.