FOURTH DISTRICT—FEBRUARY, 1910.     589

Farber v. St. Louis National Stock Yards, 152 Ill. App. 589.

## John H. Farber, Appellee, v. St. Louis National Stock Yards, Appellant.

1. MASTER AND SERVANT—*who fellow-servants as a matter of law.* *Held*, under the evidence, that a foreman or vice-principal of the master was a fellow-servant of the plaintiff who was engaged in repairing a car in railroad yards when such foreman undertook to spike a switch and to guard it so as to save the plaintiff harmless against the threatened danger that overtook him.

2. MASTER AND SERVANT—*test to be applied in determining when vice-principal acts as fellow-servant.* A test by which to determine whether a person is acting as a vice-principal or fellow-servant in a particular instance is whether, at the time of his alleged negligence, he was entrusted with the performance of some absolute and personal duty of the master himself, cast upon him as a matter of law, or retained by him as master.

3. MASTER AND SERVANT—*when obligation to furnish safe place performed.* A master has complied with the rule which requires him to furnish a safe working place for his servants when he has provided against such dangers as may reasonably be apprehended by furnishing the servant with means of protecting himself.

4. MASTER AND SERVANT—*when vice-principal becomes fellow-servant.* A foreman or vice-principal becomes a fellow-servant of the laborers in making use of the means which the master has provided to render the working place safe for employes.

5. MASTER AND SERVANT—*what declaration in action by servant should show.* Where the servant is suing his master for injuries occasioned by the negligence of another servant, he must allege and prove that the servant causing the injury was not a fellow-servant.

Action in case for personal injuries. Appeal from the Circuit Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the February term, 1909. Reversed. Opinion filed February 11, 1910.

**Statement by the Court.** On April 13, 1906, John H. Farber, appellee, was employed by appellant as a laborer in repairing a car in its yard on a track known as the "L. & N. High," when another car was run in onto this track by a switching crew of appellant and thrown against the car on which appellee was at work, knocking him down and breaking his right leg, crushing him in the chest and otherwise

seriously injuring him. Appellee sued appellant in case in the City Court of East St. Louis, charging in his declaration that James Gorman, as vice-principal of appellant, negligently ordered appellee to work under the car in question and negligently failed to keep his promise and assurance that he, Gorman, would spike the rails of the switch, and would keep a lookout and warn plaintiff, so as to prevent other cars from running in on the track where appellee was engaged and injuring him. The defendant filed the general issue. On a trial at the August term, 1906, a verdict and judgment was given in favor of appellee for $2,500, after motion for a new trial was overruled. The appellant made proper motions at close of plaintiff's evidence, and at close of all the evidence, to direct a verdict of not guilty; but the court overruled the same, and all necessary exceptions are duly saved by appellant for this appeal.

The evidence in this record proves that appellee and Gorman were principally employed by appellant as track repairers under Joe Heptenstall, as foreman, and for the same pay; but under their employment they or any members of their gang were subject to be called by appellant to do any kind of work such as cleaning the yards of dirt and other matter, removing and replacing switch-rods and switch-stands, removing wrecked cars, unloading cars, sawing wood, repairing cars and doing other general labor. Appellee had never been called on before by appellant to assist in repairing cars and insists that he had no experience in that work. He is an experienced railroad man in track repairing, having worked at it for twenty-five or thirty years, and was foreman over track repairers for about twenty-three years. He is about fifty-seven years old and had worked for appellant sixteen or eighteen months. On the borders of East St. Louis appellant conducts a stock yards and operates and maintains a large number of railroad tracks, switching yards, switch engines and other instrumentalities used in a railroad switching yard. A large number of cars

containing live stock, supplies for packing houses, and other like material, are switched into, and out of, its yards daily. Appellant maintains car inspectors who were under the direction and supervision of Henry Heirs, but it did not keep in its employ any regular crew of car repairers. When cars became disabled so that they could not be safely delivered to connecting lines, they were denominated as "bad order cars" and placed for repairs on the "L. & N. High" which connected with one end of the passing track, but not with the other end, it being a spur or blind track. On the day of plaintiff's injury Heirs had notified Heptenstall, foreman of track repairers, of this bad order car. Heptenstall then told Gorman, who was an experienced car repairer, and the plaintiff to go and repair the car, that is, put a new draw-bar on the car in place of the broken or defective one it had. Gorman and appellee then obtained a draw-bar and placed it on a push car and went to the tool house to get the necessary tools; and when there Gorman told appellee to get the tools, a spike-maul, monkey-wrench, track-chisel, track-wrench, a flag and a steel bar. Appellee got all but the flag, informing Gorman that there was no flag there. Gorman then said: "Put on a couple of spikes and I will spike the damned thing." They then went to the car to put on the draw-bar, Gorman first going about three hundred feet from the car with the spikes and spike-maul to spike the switch, while the plaintiff sat at the car and watched him. Instead of spiking it so the cars could not be run onto the "L. & N. High," Gorman made a mistake and spiked it so the cars would necessarily run from the passing track onto the switch on which they were to work. Gorman then went to the car and proceeded to loosen the bolts on the disabled draw-bar so he could take it off and replace it with the new one, remarking to appellee that "there is no room for two of us to work together." Finally Gorman directed appellee to take the bar and

pry down a certain iron to admit the new draw-bar. While appellee was doing this work the switch crew of the appellant pushed a car in on this track against the car they were repairing, knocked appellee down by the collision and ran the car on to him injuring him as aforesaid. Appellee swears that Gorman promised to keep a lookout and notify appellee of any danger before he went to work, but Gorman denies that he made any promise or statement of that kind. By the rules of the company which had been in practice for years, the car repairers were required to put out a flag on this switch, or spike it, to protect themselves against the danger of cars being switched against the cars they were to repair.

The errors assigned by appellant and which are relied on by it in the argument are (1) the refusal of the City Court at the close of the plaintiff's evidence, and also at the close of all the evidence, to direct a verdict of not guilty; (2) the verdict is contrary to, and is not supported by, the law or the evidence in the case; (3) the refusal of the City Court to grant a new trial, and in rendering judgment in the case.

DAN McGLYNN, for appellant.

WEBB & WEBB and GEORGE A. CROW, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

The real question on this appeal, and about the only one argued by the attorneys, is whether or not Gorman and the plaintiff were fellow-servants at the time of Gorman's acts of negligence which caused the plaintiff's injury. It is the opinion of this court that Gorman was foreman or vice principal of the defendant in the work of repairing the car in question, and was empowered by it to direct and control the plaintiff in that particular work as charged in the declaration; and it is also our opinion that Gorman promised the plaintiff to keep a lookout while the plaintiff was

working on the car, and guard him against the danger of cars being switched against the one on which he was at work and neglected to keep his promise. The last two questions are very strongly contested by the parties hereto; but under the evidence on each question, we are not able to say that such a finding as was evidently made in the lower court is manifestly against the weight of the evidence. It will not be necessary to discuss the evidence on these two propositions or to show how we reach our conclusions thereon, as we simply state our findings that we may be clearly understood in our decision of this case. It is now clear that the decision of this case must turn solely on the question of whether or not Gorman was doing the work of a fellow-servant when he undertook to spike the switch and to guard it so as to save the plaintiff harmless against the threatened danger that overtook him. If he was there is no liability against the defendant; but if he was doing the work of a vice principal that was entrusted to him by the defendant, then the defendant is liable. It cannot be successfully contended that the order of Gorman to work on this car was the proximate cause of the plaintiff's injury, and for which he may recover. There was no negligence in any order given by Gorman to plaintiff. The plaintiff's inexperience in car repairing had nothing at all to do with causing his injury. Had the switch been properly spiked as Gorman supposed he had done, the plaintiff could not, and would not, have been injured. It is also true that if Gorman had properly guarded this switch by keeping a lookout according to promise that plaintiff would not have been injured. These two failures on Gorman's part are his only acts of negligence proven in this case. Plaintiff knew as well as Gorman or any one else that his safety from the danger of a collision with other cars depended altogether on the character of Gorman's work in spiking and guarding that switch. It was Gorman's long experience as a car repairer and

594 APPELLATE COURTS OF ILLINOIS.

Farber v. St. Louis National Stock Yards, 152 Ill. App. 589.

the plaintiff's lack of experience in that particular work, no doubt, that led the defendant's superior servants to make Gorman foreman over Farber in the actual work of repairing cars. There is no part of the work they did, or had to do, that day except the bare work of repairing the car that Farber did not thoroughly and minutely understand. There was no reason shown why Gorman's authority should extend any further than in the matter of repairing the car and in the matter of ways and means of repairing it. There is no evidence that he had any other authority that is not absolutely annulled by the fact that the defendant had in force a positive rule about the flagging and spiking of the switch, in substance that it was the duty of the car repairers either to flag the switch or spike it so that switchmen would not endanger them by collisions with other cars. It was Farber's duty and it was Gorman's duty to obey this rule. It was for the protection of both of them. Negligence of either one in following, or omitting to follow, this rule endangered both of them. The rule was reasonable and effective for its purpose if obeyed. It had not been habitually or otherwise disobeyed before. Farber could do what the rule required as well as Gorman or any one and he knew as well as any one the importance of it being obeyed. While the plaintiff says he did not know the rules pertaining to car repairers, yet, he says, he knew this rule with reference to flagging and spiking the switch, and knew he had to have a flag on the track itself or had to spike the switch, one or both, that morning when he went to work, as appears from the abstract on page 19. There is no question or controversy over this proposition. This being so, the duty of protecting the car against collisions was under this rule, not that of appellant, but of both Farber and Gorman; and the negligence of either one was necessarily imputable to the other; and neither one under this state of facts could recover of the master for the negligence of the

other in carrying out, or failing to carry out, the rule of the defendant. As it was Farber's duty to protect himself under this rule, he could not escape the duty by accepting a promise of Gorman that he would comply with the rule or would guard him against the danger by keeping a lookout. Gorman had no right or authority to change or suspend or to abolish the rule, and when he was attempting to observe it, was not exercising any authority or control over plaintiff as a vice principal and was only attempting to perform the duty of car repairer. An employe violating a rule intended for his protection and the protection of others working with him is guilty of such contributory negligence as to bar a recovery for injuries sustained thereby. The negligence of one car inspector who undertakes to maintain a lookout for danger, or who negligently fails to observe a rule prescribed for all to observe who are working with him, is imputable to the others. 1 Thompson on Negligence, sec. 507; I. C. R. R. Co. v. Winslow, 56 Ill. App. 462; C. & A. R. R. Co. v. Myers, 95 Ill. App. 578; *Id.* v. Stevens, 80 Ill. App. 671; Wabash R. R. Co. v. Zerwick, 74 Ill. App. 670; LaBatt on Master and Servant, Vol. 1, p. 473, N. 2; Brown v. People's Gas Light Co., 81 Vt. 477, 22 L. R. A. 738 (N. S.).

It is true that the duty of the master of providing and maintaining for his servant, a reasonably safe place in which to work is non-delegable. But this rule does not require the master, as such, at all times to maintain the place reasonably safe against operation. This is a mere act of service and may be performed by a competent fellow-servant. There was nothing dangerous in this working place except when this switch or car was sought to be operated or worked on by other employes. There was nothing to do to make it and keep it a safe place, except to guard against other employes switching cars or moving engines on this track; and the defendant furnished a simple adequate rule to secure it; and all that the

596    Appellate Courts of Illinois.

Farber v. St. Louis National Stock Yards, 152 Ill. App. 589.

car repairers had to do to have safety was to obey this rule, the easiest part of their daily task and of the most importance to them. Spiking this switch and flagging it was not a duty retained by the master nor undertaken by it in this particular instance, but was by express provision of this rule made the duty of the employes as such. It was one that could be, and was in fact, delegated to co-servants. How then can there be a recovery in this case if we follow the law? Test the question in every way known to the rules of law, and the only rational conclusion that can be reached is that Gorman and the plaintiff were fellow-servants in the matter of flagging and spiking and guarding the switch. The fact that there was no flag within reach was of no consequence under the evidence. They were not compelled to work without one if necessary to their safety. A vice principal is one to whom is deputed the discharge of some duty or the exercise of some power which belongs to the master, as such. A test by which to determine whether a person is acting as a vice principal or fellow-servant in a particular instance is whether, at the time of his alleged negligence, he was intrusted with the performance of some absolute and personal duty of the master himself, cast upon him as a matter of law, or retained by him as master. If the negligence complained of consists of some act done or omitted by such foreman or vice principal while working as a co-laborer with those under his control, and which might just as readily have happened with one of them having no authority or power of a foreman or vice principal, the common master will not be liable. In any act or omission the foreman is a fellow-servant with the men under him when his act or omission is likely to be performed or omitted by any servant. He does not act as a vice principal when engaged in any work which does not pertain to the duty or peculiar power of the master. Decatur C. M. Co. v. Gogerty, 80 Ill. App. 632; Pasco v. Minneapolis S. & M. Co., 18 L. R,

A. 153 (N. S.); C. & A. R. R. Co. v. May, 108 Ill. 298; Gall v. Beckstein, 173 Ill. 191; Anderson v. Higgins, 122 Ill. App. 455; Fitzgerald v. Honkomp, 44 Ill. App. 365; 1 LaBatt's M. & S., sec 219; Met. El. Ry. Co. v. Skola, 183 Ill. 454; Baier v. Selke, 211 Ill. 512; Brown v. People's Gas Light Co., 81 Vt. 477, and 22 L. R. A. 738 (N. S.).

A master has complied with the rule which requires him to furnish a safe working place for his servants when he has provided against such dangers as may reasonably be apprehended by furnishing the servant with means of protecting himself. A foreman becomes a fellow-servant of the laborers in making use of the means which the master has provided to render the working place safe for employes. Brown v. People's Gaslight Co., 22 L. R. A. 738 (N. S.); Munn v. L. Wolf Mf'g. Co., 94 Ill. App. 122.

In the cases cited by appellee on the question of the negligence of the vice principal the work in hand was the making or selecting a safe place or appliance and not in the matter of guarding or protecting the employes at work against the probable dangerous approach of others working in some other department as in this case, and when read closely they will be seen to be inapplicable to this case, to-wit: C. & A. R. R. Co. v. Eaton, 96 Ill. App. 570; Kewanee B. Co. v. Erickson, 78 Ill. App. 35; C. B. & Q. R. R. Co. v. Avery, 109 Ill. 314; Leonard v. Kinnare, 174 Ill. 532; C. R. I. & P. R. R. Co. v. Rathneau, 225 Ill. 278.

Where the servant is suing the master for injuries occasioned by the negligence of another servant he must allege and prove that the servant causing the injury was not a fellow-servant. Chic. C. Ry. Co. v. Leach, 208 Ill. 202. The appellee having failed to prove that Gorman was not a fellow-servant at the time of his alleged negligence, and there being no dispute as to the facts bearing on that question, the lower court erred in its refusal to direct a verdict of not guilty

in this case, and the cause is therefore reversed without remanding.

*Reversed.*

Finding of fact to be incorporated in the judgment: We find as an ultimate fact that appellee and Gorman were fellow-servants at the time of the alleged negligence of Gorman.