Samuel W. Phillips, for appellant.

David Hirschfield, for respondent.

GAYNOR, J.  The lien law (Laws 1897, p. 514, c. 418) provides that contracts for the conditional sale of goods "shall be void as against subsequent purchasers, pledgees or mortgagees in good faith," unless the same has been filed (section 112 et seq.).  The statute contemplates the making and filing of an agreement for each sale, and not an omnibus agreement in advance for all future sales.  This becomes the necessary construction of the statute in view of the fact that it in effect treats and reduces the interest of the vendor to a lien like that under a chattel mortgage, which needs to be foreclosed as under a chattel mortgage by a sale on retaking the property, and the rule of law that chattels not in esse cannot be subjected to a lien as against purchasers and judgment creditors.  Jones on Chat. Mortg. (5th Ed.) § 138.

But the statute does not apply in terms to judgment creditors, but only to "subsequent purchasers, pledgees or mortgagees," although it is assumed by both sides that it does apply to judgment creditors.  Even if it did, the plaintiff would have no case, for the agreement, preamble and all, shows the intention to be that the purchaser may use the flour to bake as he needs it from time to time on giving notice to the sellor of his "desire" to use it, and paying for it "immediately, at his earliest convenience."  The preamble is in effect that the purchaser has no money to purchase flour to bake and therefore the seller is to help him to flour to bake.  If he, too, was not to let him have any to bake until it was paid for in advance, he would certainly not be helping him to get it without money.  A chattel mortgage like that would be fraudulent on its face, and the rule is the same in respect of a contract of conditional sale on the same principle.  Jones on Chat. Mortg. (5th Ed.) § 401 et seq.  The cases are collected up to the present time by the learned author.

The judgment should be reversed.

Judgment and order of the Municipal Court reversed, and new trial ordered; costs to abide the event.  All concur.

---

(129 App. Div. 500.)

### SCHMONSKE v. ASPHALT READY ROOFING CO.

(Supreme Court, Appellate Division, Second Department.  December 30, 1908.)

1. MASTER AND SERVANT (§ 89*)—INJURY TO SERVANT—LIABILITY.

　　An employé left his place of work, on the machinery being stopped, and went to a place to which he was not called by any services.  He realized that it was dangerous to take the course which he pursued to gain such place, and to be in such place.  While at such place he was injured on the machinery being started.  *Held,* that he could not recover.

　　[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 153; Dec. Dig. § 89.*]

2. MASTER AND SERVANT (§ 89*)—INJURY TO SERVANT—LIABILITY.

　　An employé in a factory left his place of work and went by a known dangerous way to a place which he had been warned was dangerous, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was injured. He knew that his services did not call him to such place. *Held*, that the employé was not in a dangerous place on the invitation of the employer, and the employer only owed the duty of avoiding injuring him after the discovery of his peril, notwithstanding the employer's liability act (Laws 1902, p. 1748, c. 600), requiring an employer to guard machinery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 153; Dec. Dig. § 89.*]

Woodward, J., dissenting.

Appeal from Trial Term, Rockland County.

Action by Charles Schmonske, an infant, by August Schmonske, his guardian ad litem, against the Asphalt Ready Roofing Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

John F. Brennan, for appellant.
William McCauley, for respondent.

JENKS, J. The servant complains that the master worked its machinery in an improper way, that the machinery was dangerous and defective and unprotected, contrary to the law, that the machinery was partly worked by an infant under 14 years of age, as the defendant's superintendent well knew, and that the injuries suffered were due to an unsafe place for work. The servant filed a notice under the employer's liability act (Laws 1902, p. 1748, c. 600).

I think the judgment entered upon the verdict against the master cannot stand. The servant was in his nineteenth year. He worked at a table in a factory wherein the defendant made asphalt roofing. His duty was to brush off sand from the edges of rolls of felt as they were passed along the table by machinery. The machinery about and on the table was worked by an engine at some distance in the building. It embraced an endless chain, with buckets which carried sand, and this chain ran quite near to the table. It also embraced certain rollers, which were placed at the end of the table and which revolved by shafting whose cog connected with cog wheels on the rollers. The machinery on the table was stopped and started by the pulling of ropes. It was stopped at intervals during the day to put on or remove rolls of felt, or if anything broke or required adjustment. The evidence is that whenever it was stopped the workers left their places and went away from the machines to any place they wished, and that before it was started an employé would cry out, "Go ahead," so that the workers thus warned could resume their places before the machinery was working. The endless chain was not stopped with the rest of the machinery. The evidence of the plaintiff is that he left his place of work and went elsewhere; that, while he was there talking to a fellow servant, an employé under the age of 14 years, named Rotello, without the usual warning, suddenly started the machinery, so that the plaintiff's sleeve was caught in the revolving cogs of the rollers, and thus his arm was drawn into them.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

But the difficulty in the way of this recovery is, first, that the evidence is not sufficient to justify a conclusion that the servant was about the work of his master at the time of the accident, or could have supposed that he was about it; but, on the contrary, it indicates that when he left his work he went to a place to which he was not called by any service, and that he could have had no reason to suppose that he went there in the course of service. The plaintiff's testimony, not only when compared with that of the former trial, but even when scrutinized upon this trial, is to a degree vague, unsatisfactory, and contradictory; but I am convinced that he realized that it was dangerous to take the course which he pursued to gain the place where he went, to be in the place, and to attempt to regain his place of work by the route which he took to reach that place. In Gibson v. Erie Railway Co., 63 N. Y. 449, 20 Am. Rep. 552, the servant, a conductor, "of his own volition and without any necessity connected with his duties," undertook to climb the cars when under way, and was injured by being struck by the projection of the roof of the station, and it was held that the plaintiff could not recover. 63 N. Y. 453, 454 (20 Am. Rep. 552). In Ellsworth v. Metheney, 104 Fed. 119, 44 C. C. A. 484, 51 L. R. A. 389, the servant at the noon hour, and not in the course of his employment, went to visit a fellow servant, and it was held that the passageway which he took to gain the society of the servant was not within the rule of a safe place to work. In Belford v. Canada Shipping Co., 35 Hun, 347, the plaintiff, who was a carpenter at work on the defendant's ship, went with the engineer at night and hid his tools on the lower deck, and was afterwards injured while going to get them in the morning, and it was held that the defendant was not liable. This case is cited in support of the text in Shearman & Redfield on Negligence (4th Ed.) 190. In Wright v. Rawson, 52 Iowa, 329, 3 N. W. 106, 35 Am. Rep. 275, a miner, in the employ of the defendant, left his own workroom and entered another to visit the occupants, and when there was injured by a falling roof, due to defective props thereof, and it was held that the defendant was not liable, for the reason that the servant was not engaged in his duty at the time of the accident. See, too, Jorgenson v. Johnson Chair Co., 169 Ill. 429, 48 N. E. 822; Swift & Co. v. McInerny, 90 Ill. App. 294. See, also, Labatt on Master and Servant, § 626; Shearman & Redfield on Negligence, § 190; Flanagan v. Atlantic Asphalt Co., 37 App. Div. 476, 56 N. Y. Supp. 18.

Second, the evidence is not sufficient to justify the conclusion that there was any license or invitation to the plaintiff to go to the place in question, or to take the way thereto which he took, and which he sought again in order to return to his proper place; for the plaintiff himself testifies that he had never seen any one take that way except the oilers of the machinery, and he virtually admits that he had been told by one or more of his fellow workmen that he must not be in that place because it was dangerous. Thus the servant, without the course of his employment, and without any reason to believe that he was acting in such employment. left his work and went by a known dangerous way to a place which he had been warned was dangerous, and when in that place, or when seeking to regain the dangerous way, was injured. This case may be discriminated from Muller v. Oakes Mfg. Co., 113

App. Div. 689, 99 N. Y. Supp. 932, cited by the learned counsel for the respondent, and like cases, e. g., Parkinson Sugar Co. v. Riley, 50 Kan. 401, 31 Pac. 1090, 34 Am. St. Rep. 123, Ryan v. Fowler, 24 N. Y. 410, 82 Am. Dec. 315, and Muhlens v. Obermeyer & Liebmann, 83 App. Div. 88, 82 N. Y. Supp. 527; for in such cases the servant, although not strictly at work when injured, nevertheless was either under invitation or license, express or implied, to go in the place or to use the appliances in question. The duty of his master under the circumstances of this case is to avoid injury to the plaintiff after discovery by the master that the servant is in a perilous position. There is nothing upon this record which shows that the master, or any one who represented him, knew or should have known that the plaintiff was in a dangerous position at the time the machinery was started. In such a case the plaintiff does not establish a cause of action merely by proof that the cogs were unguarded, because the obligation is but to guard the machinery properly, and the dangers thus to be averted are only those that a reasonably prudent person could have foreseen. King v. Reid, 124 App. Div. 121, 108 N. Y. Supp. 615; Kirwan v. American Lithographic Co., 124 App. Div. 181, 108 N. Y. Supp. 805; Glens Falls P. C. Co. v. Travelers' Ins. Co., 162 N. Y. 399, 56 N. E. 897.

The judgment must be reversed, and a new trial granted; costs to abide the event. All concur, except WOODWARD, J., who dissents.