**George Randall, Administrator de bonis non of the Estate of Philip Krummel, Deceased, Appellee, v. Crescent Coal Company, Appellant.**

**Gen. No. 6,273.**

1. MINES AND MINERALS, § 117*—*when assumed risk and contributory negligence are unavailable as defenses.* Under the Mining Act neither assumed risk nor contributory negligence is available as a defense to an action for damages caused by a wilful violation of the provisions of that act.

2. MINES AND MINERALS, § 82*—*when provision of Mining Act that mine manager shall prohibit men from returning to an unsafe mine is complied with.* It is not necessary that sec. 20-8 of the Mining Act (J. & A. ¶ 7494), should be literally followed, in its provision that the mine manager shall prohibit the men from returning to an unsafe mine, but it is sufficient if any officer of the mine owner in authority performs some act to accomplish that purpose.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Randall v. Crescent Coal Co., 203 Ill. App. 534.

3. MINES AND MINERALS, § 80*—*when employer furnishing unsafe place is liable for death of employee.* A mine owner's liability on account of the death of an employee must rest on some neglected duty to such employee, and it is not enough that such owner had an unsafe place, but the deceased must have been rightfully there before liability attaches to such owner.

4. MINES AND MINERALS, § 133*—*when master is not liable for death of employee disobeying orders.* In an action to recover under the Mining Act for the death of defendant's employee, where the deceased, after going some distance into his employer's mine, by order of his employer, to look for two men who had preceded him in search of two others who had failed after an explosion to reach the surface, received an order by telephone from his employer to return to the surface, but he continued in search of the two men who had failed to reach the surface after the explosion and was overcome by gas and killed, *held* that such employee lost his life because of his wilful disobedience of an express, reasonable and proper order of his master, and the latter would not be liable in such action.

Appeal from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding. Heard in this court at the April term, 1916. Reversed with finding of facts. Opinion filed October 12, 1916. Judgment vacated and former opinion refiled December 6, 1916.

QUINN & QUINN and WEIL & BARTLEY, for appellant; FRANK J. QUINN, JOSEPH A. WEIL and JOHN E. DOUGHERTY, of counsel.

J. L. MURPHY, for appellee; SUCHER & MOORE, of counsel.

MR. JUSTICE CARNES delivered the opinion of the court.

Philip Krummel, while in the employ of the appellant, Crescent Coal Company, at its mule barn outside of its coal mine, lost his life by going into a part of the mine where, because of an accident to the fan, there was a dangerous condition of air caused by the lack of circulation. Appellant, having elected not to

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

provide and pay compensation under the Workmen's Compensation Act, appellee brought this action to recover for the death, relying upon an alleged wilful violation of the Mines and Miners Act, chapter 93, Revised Statutes, and especially section 20-8 (J. & A. ¶ 7494), requiring in case of accident to fan or machinery by which the air currents are stopped or materially obstructed, that the mine manager shall at once order the withdrawal of the men from the mine and prohibit their return until the required ventilation has been re-established. And section 23-6-d (J. & A. ¶ 7497), requiring rules to be posted at some conspicuous point at the entrance to the mine. There was judgment on a verdict of $5,000 against the coal company, from which it prosecutes this appeal.

There is little controversy about the controlling facts. January 15, 1913, about 3:30 p. m., there was an explosion in the mine which suspended the circulation of air. The miners were at the time on their way out, and all except two shot firers reached the surface in safety. Koepple, the assistant mine manager, went back into the mine with one Cannon. After Koepple and Cannon had entered the mine Case, an officer of appellee authorized to so act, ordered Krummel by phone to go into the mine to look for Koepple and Cannon. Krummel did so, taking Read, a mule driver, with him. Appellant had a telephone system consisting of one in the mine office, one in the mule barn, and one at the "parting" about 1,500 feet in on the main entry of the mine. When Krummel and Read reached the "parting" Read testified the telephone bell was ringing, and Krummel talked back to the office, and then told him that Koepple and Cannon were out of the mine; that the message was to come out of the mine; not to go in any further; not to run any danger, but that he was going on any way. Read says he tried to induce Krummel not to go further

because of the danger of bad air, but that Krummel insisted on going on to look after the two shot firers. They went into the mine several hundred feet further where Krummel was overcome by the bad air, and Read so much affected by it that he only succeeded in getting back to the "parting" where he was found in a state of semiconsciousness. Krummel was dead when the rescuing party reached him.

Appellant does not concede that Krummel was ordered into the mine by an officer in authority, but appellee insists the officer had that authority, the evidence tends to prove it, and we accept it as the fact. There is no question that Krummel was ordered out by the same man that ordered him in. Appellee says it was not an imperative order, but the testimony of Krummel's companion, Read, and other witnesses who knew of the sending of the order, leaves no doubt that it was a direct order to return, and there can be no question that Krummel so understood it. Appellee suggests that Krummel may have been in a dazed condition at the time he received the order and for that reason may not have understood it. There is no ground in the evidence for this contention. There was no considerable danger from bad air at the "parting," or from the "parting" to that entrance to the mine where Krummel came in. There is no question but Krummel might have returned from the "parting" in safety. It follows that he lost his life in a dangerous part of the mine where he was expressly ordered not to go.

If, as matter of law, a servant cannot recover of his master for an injury occasioned by his wilful disobedience of a reasonable order, then, without regard to other questions raised in this case, the judgment should be reversed. Appellant cites numerous authorities on the proposition that such violation of an order by a servant bars his right of recovery on the

ground of contributory negligence and assumed risk. It is said in 26 Cyc. 1271: ''A servant cannot recover for an injury caused or contributed to by his failure to regard a proper warning or signal.'' There are a great number of cases cited in Cyc. in that connection. Many cases are collected in the note to 24 L. R. A. 657, but in most of the reported cases that we have examined it is said either that the servant assumed the risk or was guilty of negligence in acting in disobedience to his orders. In this State the cases of *Simmons v. Chicago & T. R. Co.*, 110 Ill. 340; *Jorgenson v. Johnson Chair Co.*, 169 Ill. 429; *Illinois Cent. R. Co. v. Houck*, 72 Ill. 285; *Chicago & W. I. R. Co. v. Flynn*, 154 Ill. 448; and *Keeley v. Cleveland, C., C. & St. L. Ry. Co.*, 158 Ill. App. 237, all denying the right of the servant to recover for an injury that he received because of his disobedience of a valid rule or order, leave it at least doubtful whether that rule as there announced was not regarded as resting on the doctrine of contributory negligence or assumed risk, or both. It has long been settled in this State that under the Mining Act neither assumed risk nor contributory negligence is available as a defense to a suit for damages caused by wilful violation of the provisions of the act. (*Streeter v. Western Wheeled Scraper Co.*, 254 Ill. 244, 258 [1 N. C. C. A. 828].) Therefore it is necessary to consider whether in the absence of those defenses a servant can recover for an injury that he receives in going into a dangerous place against the express order of his master. The provision of the Mine and Mining Act relied on by appellee recognizes just such a danger as existed in the present case, and provides that the mine manager shall prohibit the men from returning into the mine until a condition of safety is re-established. It is not necessary that this statute should be literally followed. It was said in the late case of *Arkley v. Niblack*, 272 Ill. 356, 362, in discussing a portion

of the act requiring a dangerous place to be marked, that "if the plaintiff in error had failed to mark a dangerous place, the failure was not beyond his power to correct." In the present case it may be said on the authority of that case that it was not necessary that the mine manager, although expressly named in the statute, should prevent the men from returning into the mine, but that it was sufficient if any officer of appellant in authority performed some act to accomplish that purpose. The statute was enacted for the safety of employees, and must be substantially, if not literally, complied with. If an officer of appellant in authority had attempted to prevent any miner from re-entering the mine, and that miner, from his desire to save his fellows in danger or some other worthy motive, had overcome the officer and entered the mine in spite of his efforts to keep him out, it would occur to no one that the mine owner had incurred a liability for any injury that resulted from such action of the miner. We see no difference in principle between the supposed case and the present one. Assume that appellant ordered deceased into the mine and in so doing violated the statute—as in *Arkley v. Niblack, supra,* the defendant violated the statute by not marking a dangerous place. We think the action of appellant in this case in violating the statute was, as said in the *Arkley* case, not beyond its power to correct, and that it did correct it by ordering Krummel not to proceed into the place of danger but to return to a place of safety, which he might have done.

We have been referred to no authority and have found none where under statutes abolishing the defense of contributory negligence and assumed risk the question before us has been discussed. But we see no reason why, with those defenses excluded, it should not still be true that appellant owed deceased no duty to protect him in a place of danger where he, in the

course of his employment, had no right to be. Appellant's liability, if any, must rest on some neglected duty to the deceased. It is not enough that appellant had an unsafe place. It must also appear that deceased was rightfully in that place before liability attaches to appellant. This seems too plain a principle to require the support of authority. The cases of *Mackey v. Northern Milling Co.*, 210 Ill. 115; and *McAndrews v. Chicago, L. S. & S. E. Ry. Co.*, 222 Ill. 232, forcibly illustrate the application of this rule.

Appellee says that the certified mine manager was absent at the time in question; that no rules were posted, as required by the act. And it is true that there was a failure to literally comply with the act; but what we have before said disposes of that consideration.

Appellee with much feeling calls our attention to the heroic action of deceased in his attempt to save the lives of the shot firers. If it is true, as we think it is, that he risked his own life that he might save others, his memory is entitled to that homage and respect which mankind always pay to the victims of their own courage and unselfishness. But that consideration affords no ground for the judgment in this case.

We assume that the admitted facts in the record before us could not be made to differently appear on another trial, and being of the opinion that they preclude a recovery, the judgment is reversed without remanding the cause.

*Reversed with finding of facts.*

Mr. Presiding Justice Niehaus took no part.

Finding of facts. We find that deceased lost his life because of his wilful disobedience of an express, reasonable and proper order of appellant, his master.